U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE** '15 P 4: 20

UNITED STATES OF AMERICA )
                         )
v.                       )          No. 1:14-CR-49-01-JL
                         )
PETER MCGLYNN            )

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, John P. Kacavas, the United States Attorney for the District of

New Hampshire, and the defendant, Peter McGlynn, and the defendant's attorney, Mark Sisti,

Esquire, enter into the following Plea Agreement:

1.   The Plea and The Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and

plead guilty to an Information charging him with obtaining controlled substances by fraud, in

violation of 21 U.S.C. § 843(a)(3).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in paragraph 6 of this agreement.

2.   The Statute and Elements of the Offense.

Title 21, United States Code, Section 843(a)(3) provides, in pertinent part:

It shall be unlawful for any person knowingly or intentionally . . . to
acquire or obtain possession of a controlled substance by misrepresentation, fraud,
forgery, deception, or subterfuge.

21 U.S.C. § 843(a)(3) (West 2013).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant acted knowingly and intentionally;

Second, the defendant acquired or obtained possession of a controlled substance; and

Third, that the acquisition or obtaining of the controlled substance was affected by misrepresentation, fraud, forgery, deception or subterfuge.

21 U.S.C. § 843(a)(3).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts and those facts would establish the elements of the offense beyond a reasonable doubt:

The defendant is a trained Emergency Medical Technician ("EMT"). At all relevant times, he was working at Exeter Hospital. As part of his duties at Exeter Hospital, he was authorized to have access to controlled substances and to administer controlled substances to patients.

On or about January 16, 2013, a physician in the Emergency Department at Exeter Hospital directed a nurse to administer 100 micrograms of fentanyl to a patient who was experiencing pain. Fentanyl is a Schedule II controlled substance. It is a powerful opiate that is used to treat pain.

The defendant volunteered to assist the nurse by starting an intravenous line (IV) for the patient and administering fentanyl to the patient. Records from Exeter Hospital show that the defendant removed 100 micrograms of fentanyl from a secured device where controlled

−2−

substances were stored. The defendant started the IV for the patient and told the patient and the nurse that he had administered fentanyl to the patient. However, the patient told the nurse that she had not felt any pain relief. The defendant insisted that he had administered fentanyl to the patient and showed the nurse an empty vial.

Because 100 micrograms is a substantial amount of fentanyl, the nurse expected that the drug would have addressed the patient's pain. Because the patient was still in pain, the nurse then obtained a physician's order to administer an 50 micrograms of fentanyl to the patient. After the nurse administered the fentanyl, the patient felt almost immediate pain relief.

The nurse suspected that the defendant had not administered 100 micrograms fentanyl as he had claimed. She also was suspicious of other aspects of the defendant's behavior. The nurse reported her concerns to other staff at Exeter Hospital. Subsequently, a fitness for duty evaluation was conducted. As part of that evaluation, the defendant provided a urine sample for drug testing. During the evaluation, the defendant listed the prescribed medications that he was using. He did not identify fentanyl as a drug that he was taking.

A laboratory analysis of the urine sample provided by the defendant detected the presence of several drugs, including fentanyl. A physician from the laboratory contacted the defendant to inquire about whether the defendant had a prescription or other legitimate medical reason for having fentanyl in his system. The defendant denied taking fentanyl. The government's investigation determined that the defendant did not have a prescription for fentanyl or any other legitimate medical reason to explain the presence of fentanyl in his system.

4.  Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

−3−

A.   A maximum prison term of four (4) years;

B.   A maximum fine of $250,000 (18 U.S.C. § 3571); and

C.   A term of supervised release of not more than one (1) year.   The
defendant understands that the defendant's failure to comply with any of the
conditions of supervised release may result in revocation of supervised release,
requiring the defendant to serve in prison all or part of the term of supervised
release, with no credit for time already spent on supervised release (18 U.S.C.
§3583).

The defendant also understands that he will be required to pay a special assessment of

$100 at or before the time of sentencing; and that the Court may order him to pay restitution to

the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines.   The defendant further understands that he has no right to withdraw from this Plea

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation

Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known
or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation
officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

−4−

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6.  Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree to the following specific offense characteristics under the advisory Sentencing Guidelines:

A.    The base offense level for this offense is eight (8) under U.S.S.G. § 2D2.2.

B.    The defendant's offense level should be increased by two (2) levels under

U.S.S.G. § 3B1.3 (abuse of position of trust or special skill)

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P.

11(c)(1)(C).   By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

−5−

for the offense.    The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

A.    Fails to admit a complete factual basis for the plea at the time he is
      sentenced or at any other time;

B.    Challenges the United States' offer of proof at any time after the plea is
      entered;

C.    Denies involvement in the offense;

D.    Gives conflicting statements about that involvement or is untruthful with
      the Court, the United States or the Probation Office;

E.    Fails to give complete and accurate information about his financial status
      to the Probation Office;

F.    Obstructs or attempts to obstruct justice, prior to sentencing;

G.    Has engaged in conduct prior to signing this Plea Agreement which
      reasonably could be viewed as obstruction or an attempt to obstruct
      justice, and has failed to fully disclose such conduct to the United States
      prior to signing this Plea Agreement;

H.    Fails to appear in court as required;

I.    After signing this Plea Agreement, engages in additional criminal conduct;
      or

J.    Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

–6–

in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

−7−

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.  Is entering into this Plea Agreement and is pleading guilty freely and
    voluntarily because he is guilty;

B.  Is entering into this Plea Agreement without reliance upon any promise of
    benefit of any kind except as set forth in this Plea Agreement;

C.  Is entering into this Plea Agreement without threats,
    force, intimidation, or coercion;

D.  Understands the nature of the offense to which he is pleading guilty,
    including the penalties provided by law; and

E.  Is completely satisfied with the representation and advice received from his
    undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-party federal, state or local authority. The

defendant also acknowledges that no representations have been made to him about any civil or

administrative consequences that may result from his guilty plea. The defendant understands

such matters are solely within the discretion of the specific non-party government agency

involved. The defendant further acknowledges that this Plea Agreement has been reached

without regard to any civil tax matters that may be pending or which may arise involving the

defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated

guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right

to vote, to hold public office, to serve on a jury, or to possess firearms.

−8−

12.  Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire arising from his participation in the conduct that forms

the basis of the information in this case.  The defendant understands that if, before sentencing, he

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to

appear for sentencing, the United States may consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.

13.  Waivers.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence

on direct appeal.  By entering into this Plea Agreement the defendant knowingly and voluntarily

waives his right to challenge on direct appeal:

1.  His guilty plea and any other aspect of his conviction, including, but not
    limited to, adverse rulings on pretrial suppression motion(s) or any other
    adverse disposition of pretrial motions or issues; and

2.  The sentence imposed by the Court if within, or lower than, the guideline
    range determined by the Court, or if it is imposed pursuant to a minimum
    mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in the

negotiation of this Plea Agreement or at the sentencing hearing.

B.  Collateral Review

The defendants understands that he may have the right to challenge his guilty plea and/or

−9−

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.    Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.    Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal as authorized by law.

-10-

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS

United States Attorney

Date: 2/6/2014

By: _____
John J. Farley
Assistant U.S. Attorney
N.H. Bar No. 16953
53 Pleasant St., 4th Floor
Concord, NH 03301
John.Farley@usdoj.gov

-11-

The defendant, Peter McGlynn, certifies that he has read this 12-page Plea Agreement and that he fully understands and accepts its terms.

Date:   4-14-14

Peter McGlynn, Defendant

I have read and explained this 12-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date:   4-14-14

Mark Sisti, Esquire
Attorney for Peter McGlynn

−12−