UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:14-cr-00049-1-JL |
| ) | |
| PETER McGLYNN ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Peter McGlynn pleaded guilty to one count of obtaining a controlled substances by fraud. The Presentence Investigation Report ("PSR") has correctly calculated the defendant's sentencing guideline range. However, the offense conduct section of the PSR contains information that was obtained from the defendant pursuant to a proffer agreement. Because the PSR does not indicate that certain information was derived from the proffer statements, it presents a somewhat misleading picture of the evidence in this case. This proffer information should not be included in the offense conduct section of the PSR unless its source is identified.

**BACKGROUND**

The defendant was employed at Exeter Hospital. As a result of a series of events that occurred on January 16, 2013, the defendant was drug tested and found to have fentanyl, a Schedule II controlled substance in his system. The stipulated facts in the plea agreement set forth the evidence that the government obtained in its investigation that showed that the defendant obtained this fentanyl fraudulently by taking it for personal use when he had been directed to administer the drug to a patient.

Prior to the filing of the criminal charge in this matter, the defendant and his counsel agreed to speak with the government about this matter pursuant to the terms of a proffer agreement. That agreement contained a number of provisions, including the following:

> Except as provided in this letter, no statement that McGlynn makes during the proffer session will be used by the government in any direct case against him in any trial or other proceeding unless such statement is false, misleading or made with intent to obstruct justice, in which case the statement may be used directly against him in a prosecution for perjury, making a false declaration or false statement, and/or obstruction of justice.
>
> Pursuant to U.S.S.G. § 1B1.8, the government agrees that any self-incriminating information provided by McGlynn during any proffer will not be used in determining his applicable sentencing guideline range.

The defendant subsequently pleaded guilty on May 22, 2014. After his plea, the government provided information about the case, including a report summarizing the defendant's proffer statements, to the Probation Office so that it could be used to prepare the PSR.

The draft PSR contained an offense conduct provision that made extensive use of information that was obtained from the defendant's proffer session. This information includes detailed information about how the defendant committed the crime, particularly in paragraphs 11, 12, and 15. Almost all of the information in these paragraphs was obtained from the defendant pursuant to the proffer agreement, but the PSR does not acknowledge this.

## DISCUSSION

"A proffer agreement is a binding contract, enforced according to its terms." *United States v. Farmer*, 543 F.3d 36, 374 (7th Cir. 2008). As a "division of the government," the United States Probation Office is bound by the terms of a proffer agreement. *Id.* Here, the proffer agreement placed limitations on the use of the information provided by the defendant. By including this information in the offense conduct section of the report without any indication that the information was obtained through a proffer, the PSR appears to skirt the terms of the proffer

2

agreement. Moreover, the inclusion of this incriminating information in the PSR also has the potential to mislead the Court regarding the weight of the evidence and could have an impact on the Court's sentencing decision.

Section 1B1.8 of the sentencing guidelines acknowledges that where there is an agreement that self-incriminating information will not be used against the defendant, that information "shall not be used in determining the applicable guideline range." U.S.S.G. § 1B1.8(a). While including the information may not affect the applicable guideline calculation in this case, the inclusion of this information could impact the Court's decision regarding what specific sentence to impose. There is disagreement among some courts about whether it is appropriate to use this information to determine a defendant's sentence. *See United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) (acknowledging circuit split and reserving ruling on whether proffer-protected information can be used in determining a defendant's specific sentence); *United States v. Abanatha*, 999 F.2d 1246, 1249 (8th Cir. 1993) (finding that information provided by defendant should not have been included in PSR, but finding no prejudice where defendant was sentenced at low end of guideline range).

The defendant here provided information to the government under the terms of an agreement that limited the use of that information. The government has not attempted to conceal that information from the Court or the Probation Office. However, in order to comply with the letter and the spirit of the proffer agreement, it is important for the Court to be aware that certain information in the PSR was obtained during a proffer. Absent some clarification in the PSR about the source of the information, the Court could rely on this information to make its guideline calculations. This is prohibited by the proffer agreement and U.S.S.G. § 1B1.8. The Court also

could rely on this information in determining what sentence to impose. There is disagreement among the courts about whether this is appropriate. Under these circumstances, the record should be clear about what information the Court is relying on in its determinations. By interspersing evidence obtained through a proffer with other evidence obtained in the investigation, the PSR makes it difficult to obtain clarity about how (if at all) the proffer information is being relied upon by the Court.

The government suggests that a better practice would be to include information obtained through a defendant's own proffers in a separate, clearly identified portion of the PSR. This will provide the parties and the Court with an opportunity to have clarity regarding how (if at all) this information is being relied upon at sentencing. For the purposes of this case, the government objects to the inclusion of information from the proffer in the offense conduct section, particularly in paragraphs 11, 12, and 15 of the PSR absent a specific clarification that this information was obtained from the defendant pursuant to the protection of a proffer agreement.

## CONCLUSION

For the reasons discussed above, the Court should strike paragraphs 11, 12, and 15 from the offense conduct section of the PSR or correct the PSR to reflect that the information in these paragraphs was obtained from the defendant pursuant to a proffer agreement.

Respectfully submitted,

JOHN P. KACAVAS
United States Attorney

By: /s/ John J. Farley
John J. Farley
Assistant U.S. Attorney
NH Bar # 16934
U.S. Attorney's Office
53 Pleasant Street
Concord, NH 03301
(603) 225-1552
john.farley@usdoj.gov

Dated: August 18, 2014

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was served via ECF upon counsel for the defendant.

August 18, 2014  By: /s/ John J. Farley
John J. Farley
Assistant U.S. Attorney